**Opinion issued August 26, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00430-CR

————————————

**REGGIE EDWARD CARROLL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case No. 1355069**

## MEMORANDUM OPINION

A jury found appellant, Reggie Edward Carroll, guilty of the offense of robbery.[1]  After appellant pleaded true to the allegations in two enhancement

---

[1]     *See* TEX. PENAL CODE ANN. § 29.02(a) (Vernon 2011).

paragraphs that he had twice been previously convicted of felony offenses, the jury assessed his punishment at confinement for 60 years. In two issues, appellant contends that the evidence is legally insufficient to support his conviction and the trial court erred in allowing the State to impeach his testimony with his prior convictions.

We affirm.

## Background

The complainant, Maria Gonzales, testified that on July 20, 2012, she took her two daughters to rent a movie from the "Redbox" self-service kiosk located outside the CVS Pharmacy store at the intersection of Buffalo Speedway and Main Street. She drove a black Toyota 4Runner ("SUV"), parked it in front of the Redbox, turned it off, and exited it with her daughters. The complainant left her keys in the SUV, as well as her purse and cellular telephone.

The complainant, who was focused on the Redbox, then heard someone turn on her SUV. When she turned to look, she saw appellant in her SUV. She ran to the SUV and screamed at appellant not to take it. The complainant and appellant engaged in a struggle, as he tried to knock her away. When she grabbed appellant's arm, which was on the steering wheel, he shifted the gear and accelerated the SUV to back away. The complainant then felt the SUV move backwards. Appellant made a "movement in order to get rid" of her; he pushed her

away, and the SUV moved again. Appellant then "hit" the complainant "with the [SUV] door" and "pushed" her "with the truck, like . . . with the door itself," which "impacted" the complainant and "pushed [her] onto the pavement." In other words, she was "pushed to the ground by the [SUV]." Appellant maintained eye contact with the complainant throughout the entire struggle.

When the complainant fell on the pavement she felt "[q]uite bad" and feared that appellant would run over her with the SUV. However, appellant put the SUV in reverse instead and left the parking lot. Later that same day, police officers located the complainant's SUV. She then went to the scene and identified appellant as the man who had taken her SUV.

In regard to her injuries, resulting from being pushed by the SUV to the ground, the complainant, at trial, still had marks on her arms and legs from the robbery. Her knees were scratched when they hit the ground "very, very bad[ly]." The complainant was unable to move well for approximately two weeks after the robbery, her whole body was in pain, and her knees were swollen.

The complainant's daughter, Nicole Castanda, who was present during the robbery, testified that after she, the complainant, and her sister exited the SUV and began looking for a movie, she heard someone turn on the complainant's SUV. The complainant ran towards the SUV, opened the driver's side door, and tried to

3

pull out the person in the car. At this time, the SUV was backing up quickly, and the complainant fell "[h]ard" to the ground in the parking lot.

Houston Police Department ("HPD") Officer R. Flores testified that on July 20, 2012, he was dispatched to an auto theft from the CVS Pharmacy. When Flores arrived, he spoke to the complainant, who was near the Redbox with her daughters, and he noted that she had scrapes on her body. After Flores took the complainant's statement and the statement of an independent witness, he put out an all-points bulletin for the complainant's SUV.

HPD Officer R. Gilchrest testified that on July 20, 2012, he was dispatched to the intersection of Gray Street and Main Street based on the complainant's electronic tracking of her stolen SUV. Near the intersection, Gilchrest located a black Toyota 4Runner in the parking lot of a McDonald's restaurant. He saw appellant walking away from the SUV, followed appellant, and saw him drop a set of keys near a newspaper bin. Gilchrest then detained appellant and tested one of the keys to see if it started the SUV, which it did. Subsequently, the complainant arrived at the scene, identified her SUV, and identified appellant as the person who had taken her SUV. And appellant admitted to stealing the SUV.

Appellant testified that he had intended to steal the complainant's SUV, and he admitted that he had no right to take it. However, he explained that he did not attempt to hit the complainant with the SUV and did not intend to hurt her. And,

4

when appellant put the SUV in reverse, he turned his head, so he did not see the complainant fall.

On cross-examination, the State questioned appellant about his prior convictions: (1) on September 22, 2011, in cause number 1318155, in the 230th District Court of Harris County, Texas, appellant was convicted of the felony offense of unauthorized use of a motor vehicle; (2) on March 27, 2007, in cause number 1106563, in the 248th District Court of Harris County, Texas, appellant was convicted of the felony offense of burglary of a habitation; (3) on February 19, 2007, in cause number 1435174, in the Harris County Criminal Court at Law No. 4, appellant was convicted of the misdemeanor offense of theft; (4) on July 17, 2006, in cause number 1066491, in the 182nd District Court of Harris County, Texas, appellant was convicted of the felony offense of unauthorized use of a motor vehicle; (5) on March 17, 2004, in cause number 0980862, in the 179th District Court of Harris County, Texas, appellant was convicted of the felony offense of robbery; and (6) on March 25, 2002, in cause number 1107125, in the Harris County Criminal Court at Law No. 7, appellant was convicted of the misdemeanor offense of prostitution.

Appellant also admitted that after he had gotten into the complainant's SUV, he saw her running towards him and heard her screaming at him not to take her SUV. He admitted that there was a struggle between himself and the complainant

over the SUV. Further, appellant admitted that he knew that the complainant was right beside the SUV when he started to back it away and drive off without stopping or slowing down. Instead, appellant pressed his foot down on the gas pedal.

## Sufficiency of the Evidence

In his first issue, appellant argues that the evidence is legally insufficient to support his conviction because the State failed to prove that he intentionally or knowingly caused bodily injury to the complainant.

We review the legal sufficiency of the evidence by considering all of the evidence "in the light most favorable to the prosecution" to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented

6

actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

A person commits the offense of robbery if the person, "in the course of committing theft as defined in Chapter 31 and with the intent to obtain or maintain control of the property," intentionally or knowingly "causes bodily injury to another."[2] TEX. PENAL CODE ANN. § 29.02(a)(1) (Vernon 2011). Theft is the unlawful appropriation of property with intent to deprive the owner of the property; appropriation is unlawful if "it is without the owner's effective consent." *Id.* § 31.03(a), (b)(1) (Vernon Supp. 2013). A person acts "intentionally" with respect to the result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a) (Vernon 2011). A person acts "knowingly" with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). "Bodily injury" is "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (Vernon Supp. 2013). This definition is broadly construed to include "even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989). In the case of robbery, the bodily injury element is satisfied when "violence is clearly perpetrated against

---

[2]     Robbery may be committed by intentionally, knowingly, or *recklessly* causing bodily injury to another. TEX. PENAL CODE ANN. § 29.02(a)(1). However, in this case, the State only alleged that appellant intentionally or knowingly caused bodily injury to the complainant.

another for the purpose of . . . preventing or overcoming resistance to theft." *Id.* at 787 (alteration in original) (internal quotations omitted).

Appellant asserts that the evidence, at most, shows that the complainant's injuries resulted from his reckless conduct rather than from his knowing or intentional conduct. He asserts that he "chose to steal a car that was empty with the keys in it" and "[h]e was driving away when the complainant rushed towards the car." Appellant "deliberately maneuvered around [the complainant], so as to not injure her[]. . . . He did not intentionally or knowingly cause bodily injury."

"Absent a judicial confession, the requisite culpable mental state must ordinarily be inferred from the acts of the accused or the surrounding circumstances." *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984); *see also Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) ("'[O]ne's acts are generally reliable circumstantial evidence of one's intent . . . .'" (quoting *Rodriguez v. State*, 646 S.W.2d 524, 527 (Tex. App.—Houston [1st Dist.] 1982, no pet.))). "[A] jury may infer intent [or knowledge] from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victim[]." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (internal quotations omitted). A complainant's testimony alone is sufficient to establish the requisite mental state of a defendant. *See Laster*, 275 S.W.3d at 523–24; *Bradley*

8

*v. State*, 359 S.W.3d 912, 917 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Wilson v. State*, No. 01-06-00602-CR, 2007 WL 2214863, at \*3–4 (Tex. App.— Houston [1st Dist.] Aug. 2, 2007, pet. ref'd) (mem. op., not designated for publication).

Here, the complainant testified that once she became aware that appellant was in her SUV, she ran to the SUV and screamed at him not to take it. They engaged in a struggle, and appellant tried to knock her away from him. He maintained eye contact with her throughout the struggle, and he made a "movement in order to get rid" of her. Appellant "hit [the complainant] with the [SUV] door" and "pushed" her "with the [SUV]," which "impacted" her and "pushed [her] onto the pavement" of the parking lot.

When the complainant fell onto the pavement she felt "[q]uite bad." Her knees hit the ground "very, very bad[ly]," and she was unable to move well for approximately two weeks after the robbery as her whole body was in pain and her knees were swollen. At trial, the complainant still had marks on her arms and legs from the robbery. And her injuries resulted from being pushed by the SUV to the ground.

Further, appellant admitted at trial that he saw the complainant running towards him after he got into her SUV, and he heard her screaming at him not to take it. Appellant also admitted that he had a struggle with the complainant over

9

the SUV and knew that she was right beside the SUV when he started to back it out and drive away.

Appellant acted knowingly in this case if he was aware that his conduct was reasonably certain to cause the complainant's bodily injury. *See* TEX. PENAL CODE ANN. § 6.03(b); *see also Lane*, 763 S.W.2d at 787. "The threshold of proof necessary to support a jury finding of an awareness that such result is reasonably certain to occur is concomitantly low." *Lane*, 763 S.W.2d at 787. As detailed above, appellant, in an effort to escape with the complainant's SUV, struggled with her and ultimately pushed her to the ground. And the complainant sustained bodily injury as a result of the fall. *See* TEX. PENAL CODE ANN. § 1.07(a)(8).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury could have reasonably found that appellant, at the very least, knowingly caused bodily injury to the complainant while in the course of committing theft. *Cf. Cano v. State*, 614 S.W.2d 578, 578–79 (Tex. Crim. App. 1981) (concluding evidence sufficient to support conviction of robbery for knowingly or intentionally causing bodily injury to complainant where defendant pushed complainant, causing her to fall onto pavement, while grabbing complainant's purse); *Coffee v. State*, No. 07-06-0015-CR, 2008 WL 215728, at *5–6 (Tex. App.—Amarillo Jan. 25, 2008, no pet.) (mem. op., not designated for publication) (concluding evidence sufficient to establish defendant intentionally or

10

knowingly caused bodily injury to complainant where defendant engaged in struggle with complainant to escape with stolen property and complainant sustained injuries); *Roach v. State*, No. 05-04-01348-CR, 2005 WL 2852645, at *1–2 (Tex. App.—Dallas Nov. 1, 2005, no pet.) (not designated for publication) (concluding jury could have reasonably inferred defendant intentionally or knowingly caused bodily injury to complainant where he struck complainant in chest in attempt to flee); *Moss v. State*, No. 05-01-00106-CR, 2002 WL 216121, at *2–3 (Tex. App.—Dallas Feb. 13, 2002, pet. ref'd) (not designated for publication) (concluding trier-of-fact could have reasonably found that defendant intentionally or knowingly caused bodily injury to complainant where he grabbed complainant's purse, struggled with her, and pushed her, before successfully wrestling purse away); *Henry v. State*, 800 S.W.2d 612, 613–15 (Tex. App.—Houston [14th Dist.] 1990, no pet.) (concluding evidence sufficient to establish defendant intentionally or knowing caused bodily injury to complainant where he struck complainant, who was trying to prevent defendant from leaving with stolen property); *Candelaria v. State*, 776 S.W.2d 741, 743 (Tex. App.—Corpus Christi 1989, pet. ref'd) (concluding evidence sufficient to establish defendant intentionally or knowingly caused bodily injury to complainant where defendant pushed complainant into a door to flee).

Further, although appellant testified that he did not attempt to hit the complainant with the SUV, did not intend to hurt the complainant, did not push the SUV door, and did not see the complainant fall, the jury, as the fact finder, was the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to their testimony. Given the conflicting evidence at trial, the jury could have, as it appears to have done in this case, disbelieved some or all of appellant's testimony. *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see also Wilson*, 2007 WL 2214863, at *2 ("As the determiner of the credibility of the witnesses, the fact-finder may choose to believe all, some, or none of the testimony presented." (citing *Cain v. State*, 958 S.W.2d 407 n.5 (Tex. Crim. App. 1997))). We may not reevaluate the jury's credibility determinations. *See Issasi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction of the offense of robbery.

We overrule appellant's first issue.

**Impeachment**

In his second issue, appellant argues that the trial court erred in allowing the State to impeach his testimony with his six prior convictions because they were "similar to the charged offense." *See Theus v. State*, 845 S.W.2d 874, 879–82 (Tex. Crim. App. 1992).

In reviewing a trial court's decision to admit into evidence a defendant's prior convictions, we must accord the trial court wide discretion. *Id.* at 881. We will not reverse the trial court's decision on appeal unless a clear abuse of discretion is shown. *Id.*; *Davis v. State*, 259 S.W.3d 778, 780 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). "As long as the trial court's evidentiary ruling was at least within the zone of reasonable disagreement, an appellate court may not disturb it." *Pierre v. State*, 2 S.W.3d 439, 442 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *see also Theus*, 845 S.W.2d at 881 (appellate court will reverse trial court's decision to admit prior conviction if decision lies outside zone of reasonable disagreement).

Evidence of a prior criminal offense is admissible to attack a witness's credibility if the prior offense is a felony or a crime involving moral turpitude. TEX. R. EVID. 609(a). However, before admitting evidence of such prior offenses, the trial court must determine that the probative value of admitting the evidence outweighs the prejudicial effect the evidence will have on the defendant. *Id.*

The Texas Court of Criminal Appeals has established five factors courts should use to weigh the probative value of a conviction against its prejudicial effect: (1) the impeachment value of the prior offense; (2) the temporal proximity of the past offense (relative to the charged offense) and the witness's subsequent history; (3) the similarity between the past offense and the offense being

13

prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Theus*, 845 S.W.2d at 880. The burden of demonstrating that the probative value of the evidence of prior offenses outweighs the prejudicial effect on the defendant is placed upon the proponent of the evidence; in this case, the State. *Id.*; *Davis*, 259 S.W.3d at 782.

Here, appellant asserts that the third *Theus* factor weighs against the admission of six of his prior convictions that the State used to impeach his credibility: (1) a 2011 conviction for the felony offense of unauthorized use of a motor vehicle; (2) a 2007 conviction for the felony offense of burglary of a habitation; (3) a 2007 conviction for the misdemeanor offense of theft; (4) a 2006 conviction for the felony offense of unauthorized use of a motor vehicle; (5) a 2004 conviction for the felony offense of robbery; and (6) a 2002 conviction for the misdemeanor offense of prostitution.

In response, the State argues that appellant waived his argument regarding any error as to several of the prior convictions because he failed to object to their admission in either his written "Amended Motion to Testify Free of Impeachment by Prior Convictions" or on the record during trial.

Before appellant took the stand to testify, the following exchange took place outside of the presence of the jury:

14

THE COURT: . . . We are on the record outside the presence of the jury. The defendant has filed an amended motion to testify free of impeachment by prior convictions. [Appellant's counsel], you may proceed on your motion.

[Appellant's
Counsel]: Your Honor, I think this motion, the way I have drafted it, it speaks for itself. I'm asking the Court to grant it in its entirety and should [appellant] take the stand at this trial, that he may testify free of any of those priors.

. . .

[Appellant's
Counsel]: I would ask the Court to take those -- the few minutes that it would take to read [the motion] because it . . . sets out my arguments and authorities.

In his motion, appellant requested, pursuant to Texas Rule of Evidence 609 and *Theus*, that the State be prohibited from using the following prior convictions to impeach his testimony at trial: (1) a 2011 conviction for possession of marijuana; (2) a 2007 conviction for possession of cocaine; (3) a 2004 conviction for robbery; (4) a 2000 conviction for resisting arrest; (6) a 2000 conviction for possession of marijuana; (7) a 1999 conviction for theft; and (8) a 1998 conviction for burglary. The record reveals that appellant did not request that the State be prohibited from using any other prior convictions, beyond those listed in his amended motion, to impeach his credibility.

Subsequently, the trial court made the following ruling regarding appellant's motion:

> . . . I am granting [appellant's motion] in part. I am ordering that the State be prohibited from impeaching [appellant] with his 2011 possession of marijuana conviction, his 2007 possession of cocaine conviction, his 2000 resisting arrest conviction, and his 2000 possession of marijuana conviction. Other than those specifically granted, all other convictions are denied.

The trial court also issued a written order prohibiting the State from using appellant's 2011 possession of marijuana conviction, 2007 possession of cocaine conviction, 2000 resisting arrest conviction, and 2000 possession of marijuana conviction to impeach his testimony. However, it did rule, in its written order, that the State was entitled to use appellant's 2004 robbery conviction, 1999 theft conviction, and 1998 burglary conviction. After the trial court made its ruling, appellant requested, on the record, that the trial court reconsider its ruling as to his 2004 conviction for the offense of robbery, which the trial court denied. Following the trial court's ruling, appellant took the stand to testify.

We may not determine whether a trial court erred in the admission of evidence, unless error is preserved by a proper objection and a ruling on that objection. *See Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). A proper objection is one that is timely and specific. *See* TEX. R. APP. P. 33.1; *Martinez*, 98 S.W.3d at 193. Here, appellant neither in his written motion nor on the record during trial

16

objected to the admission of his 2011 conviction for the felony offense of unauthorized use of a motor vehicle, 2007 conviction for the felony offense of burglary of a habitation, 2007 conviction for the misdemeanor offense of theft, 2006 conviction for the felony offense of unauthorized use of a motor vehicle, or 2002 conviction for the misdemeanor offense of prostitution. Because appellant did not specifically object to the admission of these prior convictions, he failed to preserve error as to them and has waived any complaint regarding their admission. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Horton v. State*, No. 01-13-0071-CR, 2014 WL 689732, at *2–3 (Tex. App.—Houston [1st Dist.] Feb. 20, 2014, no pet.) (mem. op., not designated for publication) (concluding defendant waived complaint regarding admission of 1997 and 2010 convictions when defendant only specifically mentioned 2003 conviction in asking trial court to exclude prior convictions); *Leyba v. State*, 416 S.W.3d 563, 569 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (concluding defendant's objection at trial to only six of nine prior convictions resulted in waiver of complaint as to admission of other three convictions).

Accordingly, we limit our review to the State's use of appellant's 2004 conviction for the offense of robbery.[3] *See Leyba*, 416 S.W.3d at 569–74 (limiting

---

[3]     Appellant objected to the State's use of his 2004 conviction for the offense of robbery in his "Amended Motion to Testify Free of Impeachment by Prior Convictions." After the trial court denied, in part, appellant's motion, appellant

17

appellate review to those convictions for which defendant preserved error). Appellant argues that the third *Theus* factor weighs against the admission of his prior robbery conviction because whether he was guilty of theft or robbery "was the heart of th[is] case" and "[o]nce the jury heard that [appellant] had a prior robbery case . . . the prejudicial effect outweighed the need for the[] specific impeachment offense[]." And he asserts that he was harmed by the admission of the prior robbery conviction.

During trial, the State briefly questioned appellant about his prior 2004 robbery conviction, and he acknowledged that he was convicted of the offense. In its charge, the trial court instructed the jury as follows:

> You are instructed that certain evidence was admitted before you in regard to the defendant's [sic] having been charged and convicted of an offense or offenses other than the one for which he is now on trial. Such evidence cannot be considered by you against the defendant as any evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the weight you will give his testimony, and you will not consider the same for any other purpose.

A similarity between a defendant's prior conviction and the offense being prosecuted militates against the admission of the prior conviction. *See Theus*, 845 S.W.2d at 881; *Simpson v. State*, 886 S.W.2d 449, 452 (Tex. App.—Houston [1st

requested on the record that the trial court reconsider whether the State should be prohibited from using his prior robbery conviction, which the trial court denied. And appellant requested a running objection for the remainder of the trial. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (continuing or running objection properly preserves error).

Dist.] 1994, pet. ref'd).  Here, the State sought to impeach appellant with his prior robbery conviction while appellant was on trial for the offense of aggravated robbery, a similar offense.  *See Rodriguez v. State*, 129 S.W.3d 551, 560 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).  Generally, such a similarity would weigh against the admission of appellant's prior robbery conviction because of the remote possibility that the jury would convict on the perception of a pattern of past conduct rather than on the facts of the charged offense.  *See Theus*, 845 S.W.2d at 881; *Simpson*, 886 S.W.2d at 452.  However, by giving a limiting instruction to the jury, the trial court minimized the prejudice associated with appellant's similar prior conviction.  *See Miller v. State*, 196 S.W.3d 256, 268 (Tex. App.—Fort Worth 2006, pet. ref'd); *Simpson*, 886 S.W.2d at 452; *see also Robinson v. State*, 701 S.W.2d 895, 899 (Tex. Crim. App. 1985) ("A proper instruction on the limited use of an extraneous offense will also lessen the prejudice.").  We must presume that the jury followed the trial court's instruction.  *See Gamez v. State*, 737 S.W.2d 315, 324 (Tex. Crim. App. 1987).

We conclude that any potential harm caused by the admission of appellant's prior robbery conviction was properly mitigated by the trial court's limiting instruction.  And the trial court's decision to deny appellant's request to testify free from impeachment by his prior 2004 conviction of the offense of robbery was within the zone of reasonable disagreement.  Accordingly, we hold that the trial

court did not err in allowing the State to use the conviction to impeach appellant's credibility.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).